IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID WAMPLER,

                                                **CASE NO. 2:15-CV-2514**
       **Petitioner,**                        **JUDGE GEORGE C. SMITH**
                                                **MAGISTRATE JUDGE KEMP**

       **v.**

WARDEN,
CHILLICOTHE CORRECTIONAL
INSTITUTION,

       **Respondent.**

## REPORT AND RECOMMENDATION

       Petitioner, a state prisoner, filed this action seeking a writ of habeas corpus pursuant to 28 U.S.C. §2254. This matter is before the Court on the *Petition*, Respondent's *Return of Writ* (Doc.6), Petitioner's *Reply* (Doc. 10) the *Supplement to Petitioner's Traverse* (Doc. 12), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

### Facts and Procedural History

       The Ohio Fifth District Court of Appeals summarized the facts and procedural history of this case as follows:

> On July 6, 2011, appellant lived on 522 East Mulberry Street in Lancaster, Ohio, with Howard Crane and Rose Bennett. He spent the evening of July 6 drinking and visiting next door at the home of Kathy Clum. Rose Bennett's daughter Barbie and her boyfriend Chip were also at Clum's house.
>
> Appellant began to accuse Barbie of cheating on Chip, and appellant called Barbie names. Kathy became upset with appellant. The two engaged in an argument, during which appellant said to Kathy, "I'm going to fuck you up." Chip physically picked appellant up and removed him from the back yard. Upon returning home, appellant told Rose

Bennett that he was going to "get the bitch," referring to Kathy, and he was going to "burn it down."

At 12:56 a.m. on July 7, 2011, Kathy was sitting on her front porch when she heard an explosion. Rose noticed flames coming from Kathy's garage. Rose and Howard ran next door to alert Kathy to the fire, and helped her remove items from the garage.

The fire began to spread to the house which was about 13–15 feet away, melting the siding. Shortly thereafter, fires were reported at two homes behind Kathy Clum's home on Mulberry street. The fire at one home was started by lighting a lattice attached to the porch. The flames began climbing to the second story. At the time of the fire, Jason Uhl was asleep upstairs. When firefighters arrived on the scene, Uhl was coming out of the house, having been awakened by a phone call from his girlfriend and by pounding on his door. The third fire was started when a seat cushion on the porch furniture was set on fire. Gina Getz was home when the fire started. During this same time period of approximately 45 minutes, three vehicles parked a short distance from the house fires were set on fire and completely destroyed.

The next day, police arrested appellant on a probation violation warrant. They found him hiding in a closet in his residence. Although appellant had told Howard Crane he was staying inside after the argument with Kathy, he admitted that he was walking around outside during the time of the fires. In fact, video surveillance from a bank recorded appellant walking in the area of the fires during the time period in which the fires were set.

Appellant was charged in a 16–count indictment with four counts of aggravated arson, one count of attempted arson, ten counts of arson and one count of theft. The theft charge and several of the counts of arson related to events which occurred on October 18, 2011.

The case proceeded to jury trial in the Fairfield County Common Pleas Court. At trial, fire inspector Jason Coy testified that the pattern of fires set on July 7, 2011, was consistent with a "spree arsonist," where three or more fires

are set with no cooling off period, with the arsonist typically having a motive for setting the first fire. Coy described how by walking the route of the fires set on July 7, 2011, he concluded that one person could have set all the fires. He further testified that the video showing appellant walking by a bank at 1:10 a.m. corresponded to appellant's approximate location if he walked from the house fires set at 1:07 to the car fires reported at 1:13 a.m. Coy testified that the fires all were consistent with being set with the flick of a lighter with no accelerant. Crane testified that appellant smoked, and carried a Bic lighter with him.

Following trial, appellant was convicted of four counts of aggravated arson, one count of attempted aggravated arson, and four counts of arson, all related to the fires set on July 7, 2011. He was acquitted of the remaining charges, including all charges related to fires set on October 18, 2011. The court merged counts one and two and sentenced appellant to eight years incarceration on count one. The court sentenced appellant to five years incarceration for count three, and 18 months each for counts four, five, six and seven. The court merged counts eight and nine and sentenced appellant to nine years incarceration. The court ordered all sentences to run consecutively. Appellant assigns five errors on appeal to this Court:

"I. DEFENDANT–APPELLANT WAS DENIED A SPEEDY TRIAL UNDER OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"II. THE CONVICTION WAS BASED UPON INSUFFICIENT EVIDENCE AND OTHERWISE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"III. DEFENDANT–APPELLANT WAS DENIED A FAIR TRIAL BY THE IMPROPER JOINDER OF OFFENSES CONTRARY TO OHIO LAW AND THE STATE AND FEDERAL CONSTITUTIONS.

"IV. DEFENDANT–APPELLANT WAS DENIED DUE
PROCESS BY A SENTENCE CONTRARY TO OHIO LAW
AND THE STATE AND FEDERAL CONSTITUTIONS.

"V. DEFENDANT–APPELLANT WAS DENIED THE
EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO
THE STATE AND FEDERAL CONSTITUTIONS

*State v. Wampler*, No., 2014 WL 80196, at *1-2 (Ohio App. 5th Dist. Jan. 2, 2014). On

January 2, 2014, the appellate court affirmed the judgment of the trial court. *Id*. On

May 28, 2014, the Ohio Supreme Court declined to accept jurisdiction of the appeal.

*State v. Wampler*, 139 Ohio St.3d 1404 (Ohio 2014). On May 19, 2014, Petitioner filed a

motion for a delayed appeal with the Ohio Supreme Court. (Doc. 6-1, Exhibit 25.) On

July 9, 2014, the Ohio Supreme Court denied Petitioner's motion for leave to file a

delayed appeal. *State v. Wampler*, 139 Ohio St.3d 1470 (Ohio 2014). On April 2, 2014,

Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule

26(B). (Exhibit 27.) On May 20, 2014, the appellate court denied the Rule 26(B)

application. (Exhibit 28.) Thereafter, on August 5, 2014, Petitioner filed a Motion for

Discovery. (Exhibit 29), and Motions for Disclosure of and Specific Request for

Exculpatory and Impeachment Evidence. (Exhibit 30.) On October 17, 2014, the trial

court denied Petitioner's motions. (Exhibit 33.) None of these latter motions was the

subject of an appeal.

On July 1, 2015, Petitioner filed the instant petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2254. He asserts that he was denied the effective assistance of

counsel (claim one); that the evidence is constitutionally insufficient to sustain his

conviction and that his conviction is against the manifest weight of the evidence (claim

4

two); that he was denied a fair trial due to the improper joinder of offenses (claim three); and that he was denied due process because his sentence contravenes Ohio law and the State and Federal Constitutions (claim four). It is the position of the Respondent that all of Petitioner's claims must be dismissed as procedurally defaulted.

## Procedural Default

Congress has provided that state prisoners who are in custody in violation of the Constitution or laws or treaties of the United States may apply to the federal courts for a writ of habeas corpus. 28 U.S.C. § 2254(a). In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the state courts for consideration. 28 U.S.C. § 2254(b), (c). If he fails to do so, but still has an avenue open to him by which he may present his claims, then his petition is subject to dismissal for failure to exhaust state remedies. *Id.; Anderson v. Harless*, 459 U.S. 4, 6, 103 (1982 (*per curiam*) (citing *Picard v. Connor*, 404 U.S. 270, 275–78 (1971)). Where a petitioner has failed to exhaust his claims but would find those claims barred if later presented to the state courts, "there is a procedural default for purposes of federal habeas...." *Coleman v. Thompson,* 501 U.S. 722, 735 n. 1 (1991).

The term "procedural default" has come to describe the situation where a person convicted of a crime in a state court fails (for whatever reason) to present a particular claim to the highest court of the State so that the State has a fair chance to correct any errors made in the course of the trial or the appeal before a federal court intervenes in

the state criminal process. This "requires the petitioner to present 'the same claim under the same theory' to the state courts before raising it on federal habeas review." *Hicks v. Straub*, 377 F.3d 538, 552–53 (6th Cir. 2004) (quoting *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987)). One of the aspects of "fairly presenting" a claim to the state courts is that a habeas petitioner must do so in a way that gives the state courts a fair opportunity to rule on the federal law claims being asserted. That means that if the claims are not presented to the state courts in the way in which state law requires, and the state courts therefore do not decide the claims on their merits, neither may a federal court do so. In the words used by the Supreme Court in *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977), "contentions of federal law which were not resolved on the merits in the state proceeding due to respondent's failure to raise them there as required by state procedure" also cannot be resolved on their merits in a federal habeas case-that is, they are "procedurally defaulted."

In the Sixth Circuit, a four-part analysis must be undertaken when the state argues that a federal habeas claim is waived by the petitioner's failure to observe a state procedural rule. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). "First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule." *Id.* Second, the Court must determine whether the state courts actually enforced the state procedural sanction. *Id.* Third, it must be decided whether the state procedural forfeiture is an adequate and independent state ground upon which the state can rely to foreclose review of a federal constitutional claim. *Id.* Finally, if the Court has determined that a state procedural

rule was not complied with, and that the rule was an adequate and independent state ground, then the petitioner must demonstrate that there was cause for him not to follow the procedural rule, and that he was actually prejudiced by the alleged constitutional error. *Id*. This "cause and prejudice" analysis applies to failures to raise or preserve issues for review at the appellate level. *Leroy v. Marshall*, 757 F.2d 94 (6th Cir. 1985).

Turning to the fourth part of the *Maupin* analysis, in order to establish cause, petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Constitutionally ineffective counsel may constitute cause to excuse a procedural default. *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000). In order to constitute cause, an ineffective assistance of counsel claim generally must " 'be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default.' " *Edwards*, 529 U.S. at 452 (quoting *Murray v. Carrier*, 477 U.S. 478, 479 (1986)). That is because, before counsel's ineffectiveness will constitute cause, "that ineffectiveness must itself amount to a violation of the Sixth Amendment, and therefore must be both exhausted and not procedurally defaulted." *Burroughs v. Makowski*, 411 F.3d 665, 668 (6th Cir. 2005). Or, if procedurally defaulted, petitioner must be able to "satisfy the 'cause and prejudice' standard with respect to the ineffective-assistance claim itself." *Edwards v. Carpenter*, 529 U.S. 446, 450–51 (2000). The Supreme Court explained the importance of this requirement:

> We recognized the inseparability of the exhaustion rule and
> the procedural-default doctrine in Coleman: "In the absence
> of the independent and adequate state ground doctrine in

federal habeas, habeas petitioners would be able to avoid the exhaustion requirement by defaulting their federal claims in state court. The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." 501 U.S., at 732, 111 S.Ct. 2546, 115 L.Ed.2d 640. We again considered the interplay between exhaustion and procedural default last Term in *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999), concluding that the latter doctrine was necessary to " 'protect the integrity' of the federal exhaustion rule." *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (quoting id., at 853, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting)). The purposes of the exhaustion requirement, we said, would be utterly defeated if the prisoner were able to obtain federal habeas review simply by " 'letting the time run' " so that state remedies were no longer available. *Id.*, at 848, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1. Those purposes would be no less frustrated were we to allow federal review to a prisoner who had presented his claim to the state court, but in such a manner that the state court could not, consistent with its own procedural rules, have entertained it. In such circumstances, though the prisoner would have "concededly exhausted his state remedies," it could hardly be said that, as comity and federalism require, the State had been given a "fair 'opportunity to pass upon [his claims].' " *Id.*, at 854, 526 U.S. 838, 119 S.Ct. 1728, 144 L.Ed.2d 1 (STEVENS, J., dissenting) (emphasis added) (quoting *Darr v. Burford*, 339 U.S. 200, 204, 70 S.Ct. 587, 94 L.Ed. 761 (1950)).

*Edwards*, 529 U.S. at 452–53.

If, after considering all four factors of the *Maupin* test, the court concludes that a procedural default occurred, it must not consider the procedurally defaulted claim on the merits unless "review is needed to prevent a fundamental miscarriage of justice, such as when the petitioner submits new evidence showing that a constitutional violation has probably resulted in a conviction of one who is actually innocent." *Hodges*

8

*v. Colson*, 727 F.3d 517, 530 (6th Cir. 2013) (citing *Murray v. Carrier*, 477 U.S. 478, 495–96 (1986)).

Here, Petitioner asserts in claim one that he was denied the effective assistance of counsel. In claim two, he asserts that the evidence is constitutionally insufficient to sustain his convictions and that his convictions are against the manifest weight of the evidence. In claim three, he asserts that he was denied a fair trial due to the improper joinder of offenses. In claim four, he asserts that he was denied due process because his sentence contravenes Ohio law and the State and Federal Constitutions. Petitioner properly raised all of the foregoing claims on direct appeal to the Fifth District Court of Appeals, and that court ruled on them. The problem here, however, is that Petitioner, when he took the next appeal to the Ohio Supreme Court, did not raise any of them. The only claim he presented to that court was that he was convicted in violation of Ohio's speedy trial statutes. (Doc. 6-1, Ex. 20.) Once an Ohio defendant has taken an appeal to the Ohio Supreme Court, he cannot appeal again; a second appeal (or any other effort to raise these claims) would be dismissed under Ohio's doctrine of *res judicata. See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). That means that Petitioner did not give the Ohio courts a full opportunity to correct any errors relating to the claims he is presenting here.

The Court does have to determine, under *Maupin*, if Ohio's doctrine of *res judicata* is adequate and independent reason why the state courts would no longer entertain

Petitioner's claims.  To be "independent," the procedural rule at issue, as well as the state court's reliance thereon, must rely in no part on federal law.  *See Coleman v. Thompson*, 501 U.S. 722, 732–33 (1991).  To be "adequate," the state procedural rule must be firmly established and regularly followed by the state courts.  *Ford v. Georgia*, 498 U.S. 411 (1991).  "[O]nly a 'firmly established and regularly followed state practice' may be interposed by a State to prevent subsequent review by this Court of a federal constitutional claim."  *Id.* at 423 (quoting *James v. Kentucky,* 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149 (1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v. Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.*, the *Perry* rule, is an adequate ground for denying federal habeas relief.  *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v. *Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir. 2000); *Norris v. Schotten,* 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently refused, in reliance on the doctrine of *res judicata,* to review the merits of claims because they are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at 16. Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity.

With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal

law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

All of this means that, by not asking the Ohio Supreme Court to take a second look at these issues, Petitioner procedurally defaulted his claims for federal habeas corpus review. He could get a federal court to review of his claims on the merits if he could demonstrate cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. *See Coleman*, 501 U.S. at 753; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). To show "cause" for such a default, only a handful of valid reasons can be argued, and none of them appear to apply here. The default happened when Petitioner's counsel filed the memorandum in support of jurisdiction in the Ohio Supreme Court and left out these claims. Any failure on counsel's part at that stage of the case does not rise to the level of "cause." Although an attorney's performance can be so deficient that it violates the United States Constitution's guarantee of effective counsel, that rule does not apply to counsel's performance at the level of a discretionary appeal. A defendant in Ohio has no right to the assistance of counsel in his discretionary appeal to the Ohio Supreme Court. *See Barkley v. Konteh,* 240 F.Supp.2d 708, 714 (N.D. Ohio Dec. 13, 2002)(citing *Pennsylvania* v. *Finley*, 481 U.S. 551, 555 (1987)("[T]he right to appointed counsel extends to the first appeal of right, and no further"). Consequently, even if counsel made an error at that point, that error will not excuse the defendant from having to present his claims to the state courts in order to preserve them for federal habeas corpus review.

Actual innocence is another reason why a procedural default can be excused. However, the Court's independent review of the record does not show that Petitioner is actually innocent or the victim of a manifest miscarriage of justice.  Petitioner presents no new reliable evidence establishing his factual innocence of the charges against him. Further, the record does not indicate that this case is of that rare or extraordinary type that justifies a merits review of his otherwise procedurally defaulted claims. *See Souter v. Jones*, 395 F.3d 577, 589 (6th Cir. 2005) (footnote and citations omitted); *see also McQuiggin v. Perkins*, ___ U.S. ____, 133 S.Ct. 1924, 1931–32 (2013).  Since the claims raised here were not properly presented to the state courts, and there is no basis for excusing Petitioner for that failure, this Court cannot consider the merits of any of his claims, let alone grant him a writ of habeas corpus.

### Recommended Disposition

For all of these reasons, the Magistrate Judge **RECOMMENDS** that the petition for a writ of habeas corpus be **DENIED** and that this action be **DISMISSED**.

### Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or

recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

The parties are further advised that, if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

/s/ Terence P. Kemp
United States Magistrate Judge